```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                    HAMMOND DIVISION


NICOLE KOSZUSEK and           )
WESLEY KOSZUSEK, JR.,         )
                              )
     Plaintiffs,              )
                              )
vs.                           )    NO.  2:05-CV-394
                              )
DALE BREWER, et al.,          )
                              )
     Defendants.              )
```

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss, filed on December 22, 2005. For the reasons set forth below, this motion is **DENIED**.

BACKGROUND

On November 1, 2005, Plaintiffs, Nicole Koszusek and Wesley Koszusek, Jr., filed a complaint against Defendants, Dale Brewer and George Nelson, in their individual capacities. According to the allegations contained in the complaint, Plaintiffs were registered voters, residing in the Town of Porter, during the Indiana General Election held on November 4, 2003. Plaintiffs were unable to vote in person at their polling place for this election so they completed and returned absentee ballots prior to the election.

At all relevant times, Defendant Brewer was the county clerk of

the County of Porter and thereby a member of the Porter County Election Board, while Defendant Nelson was chief of the Chesterton Police Department and an agent of the Porter County Election Board. Prior to the date of the election, Defendants received information which they claimed established that Plaintiffs were not qualified or properly registered to vote in the 2003 Indiana General Election. Defendants, both Republicans, believed Plaintiffs to be Democrats who would vote for democratic candidates. As such, Defendants conspired to challenge and spoil Plaintiffs' absentee ballots so as to assist other Republicans in winning the election for the offices of town council for the Town of Porter.

On November 4, 2003, Brewer went to the polling place where Plaintiffs' absentee ballots were located and claimed Plaintiffs were not residents of Porter or not properly registered to vote. Brewer, abusing her position, convinced the poll judge to "spoil" Plaintiffs' ballots. Consequently, Plaintiffs' ballots were never counted or included in the vote totals for the November 2003, Indiana General Election.

Based upon these allegations, Plaintiffs have brought federal constitutional claims via section 1983, as well as state constitutional and common law claims. In response, Defendants have filed the instant motion to dismiss claiming Plaintiffs have failed to allege a cause of action for which relief is available. Defendants argue that these allegations do not support federal constitutional

claims and, even if they did, Defendants are immune from such.  As to the state claims, Defendants proffer that the state constitutional claims must fail because the Indiana Constitution was not violated and, even if it were, the Indiana Constitution does not provide for a private right of action for monetary damages.  Finally, Defendants argue the state common tort claims fail on their merits and, they are entitled to immunity for any tort action.  These arguments will be addressed in turn.

DISCUSSION

The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to decide the merits.  *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989).  In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).  A court may dismiss a complaint only if it appears beyond doubt the plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Further, a court must "construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985).  A complaint need not plead law or be tied to one

legal theory.  *LaPorte County Republican Cent. Comm. v. Board of Comm'rs of the County of LaPorte*, 43 F.3d 1126, 1129 (7th Cir. 1994) (citing *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)).  A complaint may not be dismissed just because it omits factual allegations, but it may be dismissed when the plaintiff makes clear that she does not plan to prove an essential element of her case.  *Id.*

United States Constitution

The parties dispute whether the facts, as alleged, give rise to a constitutional claim.  The Supreme Court has taught that "[u]ndeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections."  *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).  States, however, have the authority to regulate voter qualifications and election procedures.  *Oregon v. Mitchell*, 400 U.S. 112 (197).  Thus, when a plaintiff invokes section 1983 and challenges in federal court the conduct of a state election, the court is faced with the difficult task of balancing the protection of the fundamental right to vote with the avoidance of excessive entanglement of federal courts in state election matters.  *Dieckoff v. Severson*, 915 F.2d 1145, 1148 (7th Cir. 1990).  In this Circuit, Judge Flaum struck that balance in the widely accepted case of *Bodine v. Elkhart County Election Bd.*, where he wrote:

> It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983. In what has become a widely accepted statement of the standard, Judge Tone in Hennings held that section 1983 is implicated only when there is willful conduct which undermines the organic processes by which candidates are elected.

788 F.2d 1270, 1271-72 (7th Cir. 1986)(citations omitted). Judge Flaum equated "undermining the organic process by which candidates are elected" with the election process reaching the point of "patent and fundamental unfairness." *Id*. (citing *Hendon v. North Carolina State Bd. Of Elections*, 710 F.2d 177, 182 (4th Cir. 1983)).

Defendants argue that this case presents nothing more than a garden variety election issue. It is true that, based upon principles of federalism, not every election irregularity will give rise to a constitutional claim and an action under section 1983. *Hennings v. Grafton*, 523 F.2d 861, 864 (7th 1975). However, Plaintiff's allegations set forth more than a garden variety election issue. To the contrary, Plaintiffs have alleged Defendants willfully attempted to undermine the election process by intentionally having Plaintiffs' votes not counted due to partisan politics. Whether Plaintiffs acted with any such intent or whether they had any actual influence on the election is immaterial at this point. Such an allegation is sufficient to trigger a viable constitutional violation. *Reynolds v. Sims*, 377 U.S. 533, 554 (1964); *Bodine*, 788 F.2d at 1271-72; *cf. Lunde v. Oldi*, 808 F.2d 219, 220 (2d Cir. 1986)(finding that voter did not state a section 1983 claim against state election official due to

voter's failure to allege state election official acted intentionally in not counting vote).

Nevertheless, Defendants proffer that this claim should fail because, under the structure of Indiana election law, it is legally impossible for Defendants' alleged actions to have caused Plaintiffs' deprivations.  Defendants point out that it was the poll judge's determination as to whether or not invalidate a ballot and, therefore, it was the poll judge's decision, not the Defendants alleged intentional misconduct, that caused the invalidation of their ballots. While the Court duly notes the codified responsibilities of a poll judge, Plaintiff's argument is premature at this stage.  The allegations of the complaint set forth that it was the abusive, coercive actions of the Defendants' that caused the poll judge to invalidate Plaintiffs' ballots.  This is enough to stave off Defendants' causation arguments, for now.

Finally, the Defendants seek dismissal based upon immunity. Brewer seeks dismissal based on absolute legislative immunity, absolute quasi-judicial immunity and qualified immunity for her alleged acts, while Nelson seeks qualified immunity.  In an attempt to establish legislative immunity, Brewer relies heavily on *Ellis v. Coffey County Bd. Of Registrars*, 981 F.2d 1185 (11th Cir. 1993). "Officials seeking absolute immunity must show that such immunity is justified for the governmental function at issue."  *Id.* at 1190 (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).  The inquiry in

determining whether legislative immunity exists focuses on whether local legislators were engaging in legislative activity. *Id*. Brewer claims that she was following statutorily prescribed guidelines when investigating voter eligibility. However, this is inconsistent with the allegations of the complaint. According to the allegations of the complaint, Brewer knew that Plaintiffs were properly registered, but nevertheless conspired with Nelson in an attempt to invalidate Plaintiffs' vote. Further, the complaint alleges she abused her position to influence the poll judge to invalidate Plaintiffs' votes. Based upon the allegations contained in the complaint, the Court is unable to say at this point, as a matter of law, that Brewer was exercising a legislative function when she "investigated" and "reported" Plaintiffs' ineligibility to the poll judge. Instead, this Court can imagine a set of facts consistent with the complaint's allegations that would place Brewer outside the scope of legislative activity. The same rationale applies to the Court's decision to deny absolute quasi-judicial immunity at this time. Indeed, the Court can imagine a set of facts consistent with the complaint wherein Brewer would be acting outside of quasi-judicial activity. Finally, this Court cannot say that Defendants are entitled to qualified immunity at this point either. Qualified immunity attaches to an official's actions if that official can show that the Constitutional right claimed to have been violated was not "clearly established" at the time of the violation. *Nanda v. Moss*, 412 F.3d 836 (7th Cir. 2005).

Taking the allegations as true, it can be said that Defendants intentionally violated Plaintiffs' right to vote. This right is clearly established, and was so in November 2003. *See Reynolds*, 377 U.S. at 554.

Indiana Constitution

The Plaintiffs have alleged Defendants' actions violated Article I of the Indiana Constitution; specifically, rights afforded under the privileges and immunities clause, the right to equal protection, and the right to due process. Consequently, Plaintiffs seek compensatory and punitive damages as well as equitable relief due to the alleged violations.

Defendants seek dismissal of this claim asserting that the alleged violated section of the Indiana Constitution does not provide for a private right of action for money damages. This argument fails for two reasons. First, Plaintiffs seek equitable relief as well as money damages. Thus, even if the Court would find money damages unavailable, the claim itself would still survive. Second, the issue of whether money damages is available for this type of alleged violation is currently pending before the Indiana Supreme Court via a certified question. *Cantrell v. Morris*, No. 2:04-CV-364, 2005 WL 1159416 (May 17, 2005 N.D. Ind.). With these two principles in mind, and taking judicial economy into consideration, to dispositively rule on this issue would seem to be imprudent at this time.

Indiana State Law Claim

Plaintiffs final claim is that Defendants acted tortiously in: (1) negligently spoiling their ballots; and (2) negligently inflicting emotional distress upon them. Relying on *Carter v. Harrison*, 5 Blackf. 138, 1839 WL 2201 (Ind.), Defendants assert that Plaintiffs' state law claims should be dismissed, as negligence claims asserting a violation of Title 3 of the Indiana Code cannot be maintained.

In *Carter*, the court held that an election officer is not responsible in damages if he honestly rejects a plaintiff's legal vote. However, *Carter* went on to state that damages may lie against an election officer who rejects a legal vote out of malice. The determination of this claim, like those before it, hinge on the parties' differing version of the facts. Throughout this litigation, Defendants have maintained that they were merely acting as election officials in investigating and reporting Plaintiffs' voting status. However, at this stage, the Court must accept the complaint's allegations as true. The allegations state that Defendants conspired to intentionally invalidate Plaintiffs' right to vote for political reasons, which under *Carter*, may give rise to damages. Therefore, based upon the parties' respective arguments, coupled with the allegations of the complaint, this claim must remain.

CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**.

| | |
|---|---|
| **DATED:  May 16, 2006** | **/s/RUDY LOZANO, Judge**<br>**United States District Court** |