## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| NICOLE KOZUSZEK and | ) | |
| WESLEY KOZUSZEK, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO.  2:05-CV-394 |
| | ) | |
| DALE BREWER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

This matter is before the Court on: (1) Defendants' Motion for
Summary Judgment, filed on January 30, 2007; (2) Plaintiffs' Motion
to Strike, filed on March 9, 2007; and (3) Defendants' Motion to
Strike, filed on March 23, 2007.  For the reasons set forth below,
Defendants' Motion for Summary Judgment (DE# 20) is **GRANTED**.
Plaintiff's Motion to Strike (DE# 26) is **DENIED AS MOOT**.
Defendants' Motion to Strike (DE# 28) is **DENIED AS MOOT**.
Accordingly, Plaintiffs' federal claims are dismissed with
prejudice and Plaintiffs' state law claims are dismissed without
prejudice.  The Clerk is **ORDERED** to close this case.


BACKGROUND

This case centers around Plaintiffs' absentee votes being

-1-

challenged and ultimately not counted during the Indiana General Election held on November 4, 2003.  Due their votes being contested and ultimately not counted, Plaintiffs have brought federal constitutional claims via section 1983, as well as state constitutional and common law claims against Defendants, Dale Brewer and George Nelson, in their individual capacities.

Defendants previously challenged the sufficiency of Plaintiffs' complaint by filing a motion to dismiss.  However, this Court denied that motion, finding that the allegations, taken in a light most favorable to Plaintiffs, stated a claim for which relief could be sought.  Discovery has now been completed and Defendants filed a motion for summary judgment claiming that no genuine issue of material fact exists and they are entitled to judgment as a matter of law.

Plaintiffs and Defendants also each filed a motion to strike materials the other side relied on in their respective summary judgment briefs.  Plaintiffs request this Court to strike a report prepared by Porter County Police Officer Michael Jenkins, arguing that the report constitutes impermissible hearsay and Officer Jenkins' opinion does not meet the requirements of Federal Rule of Evidence 702.  Defendants request the Court to strike portions (paragraphs 13-17) of J.J. Stankiewicz's affidavit, arguing that such matters are irrelevant and impermissible.

DISCUSSION

Motion for Summary Judgment

Summary judgment standard

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant.  *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.  *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine

-3-

issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Facts

The facts are largely uncontested.[1]  In 1990, George Nelson was appointed Chief of Police of the Town of Chesterton, Indiana. (Nelson Dep. p. 4).  Nelson served as a poll worker in several elections after being appointed Chief of Police.  (Nelson Dep. pp. 10-12).  For the November 2003 Indiana General Election, Nelson served as a poll judge at the "Westchester 3" voting precinct in Chesterton, Indiana.  (Nelson Dep. p. 21).

In January 2000, Dale Brewer was elected Circuit Clerk of Court of Porter County, Indiana ("Clerk") and held this office in November 2003.  (Brewer Dep., Sept. 22, 2006, p. 17).  As Clerk, Brewer was designated by statute to be the Secretary of the Porter County Board of Elections ("Secretary"), a position she held in November 2003.  (Brewer Dep., April 22, 2004, p. 4).  Brewer assisted the Porter Republicans in the 2003 election, by giving campaign strategy advice and serving as the town coordinator for Republicans in Porter.  (Brewer Dep. Sept. 22, 2006, pp. 23-25).

Nicole and Wesley Kozuszek are siblings.  In 2003, Wesley signed a one year lease at 104 North Jackson, Chesterton, Indiana, starting June 1, 2003 and continuing through May 31, 2004.  (Ex. F,

---

[1]This seems to be the case anyway.  Unfortunately, Plaintiffs fail to point out what facts are in dispute and which of those facts are material.  While Plaintiffs do denominate a section of their response brief as a "Statement of Genuine Issues," this section is nothing more than a full recitation of the facts in this case.

p. 1).  On October 5, 2003, Wesley made a call to the Chesterton Police reporting the theft of his car.  (Wesley Dep. p. 10).  In response, a police officer arrived to 104 North Jackson Boulevard in Chesterton, Indiana.  (Wesley Dep. p. 12).  The police report summarizing the investigation lists Wesley's address as 104 North Jackson, and the body of the report notes his residence is at that address as well.  (Ex. E at 1).  A few days later, Nelson reviewed the car theft report, including the face sheet, which listed Wesley's address at 104 North Jackson and described his residence as being there.  (Nelson Dep. pp. 28, 30).

On October 22, 2003, Nicole gave a statement that became part of the police report, in which she described 104 North Jackson as her "home," and listed, in her handwriting, that location as her address.  (Ex. E at 12).  The Kozuszeks were both registered to vote prior to the November 4, 2003, election, and had done so by listing their parents' home, 1521 North Main Street, Porter, Indiana, as their residence.  (W. Kozuszkek Aff.; N. Kozuszek Dep. pp. 75-76, 84-84, 96-97).  Both Nicole and Wesley were unable to vote in person, so they applied for and voted by way of absentee ballot.  (W. Kozuszek Aff. ¶ 7; W. Kozuszek Dep. p. 116; N. Kozuszek Dep. p. 84).

Prior to the 2003 election, Wesley and Nicole's mother, Kathryn Kozuszek, had been elected to the position of Porter Town Council President as a Democrat.  (K. Kozuszek Aff. ¶ 3).  Kathryn

Kozuszek ran for re-election in the 2003 general election and was defeated by a Republican. (K. Kozuszek Aff. ¶ 6).

Approximately one week before the November 4, 2003 Indiana General Election, election workers, including Nelson, attended a training session. (Brewer Dep. Sept. 22, 2006, p. 37). At this session, a "claim voucher" was distributed to election workers, which listed all of the election workers' names and contact information, including addresses. (Nelson Dep. pp. 22-23). Nelson believed that workers were supposed to review the sheet to ensure the accuracy of the personal information listed on it. (Nelson Dep. p. 23). The address listed on the claim voucher would be where the workers' payments for election duties would be sent. (Nelson Dep. p. 31). Nelson looked at the names of his would-be co-workers and noticed Wesley Kozuszek's name on the form. (Nelson Dep. p. 19, 24). Nelson also noticed that a Porter, Indiana address was listed for Wesley. (Nelson Dep. p. 19). Nelson told Steve Yakelski, an "inspector" who was sitting next to Nelson at the training session, about what Nelson thought was an address discrepancy for Wesley. (Nelson Dep. p. 19). Nelson planned on telling Wesley about this discrepancy at the training session so that Wesley could get paid, but Wesley never showed up. (Nelson Dep. p. 20). Yakelski suggested that Nelson tell "one of the election people" about the potential address mix-up. (Nelson Dep. p. 20). Dale Brewer was the closest election person to Nelson, so

-7-

he mentioned it to her, telling her that he had seen a recent police report stating that Wesley lived in Chesterton, not Porter as the claim sheet represented.  (Nelson Dep. p. 20).

Brewer did not think about this residency issue again until election day, November 4, 2003, when she saw Wesley at the precinct where he was volunteering.  (Brewer Dep. Sept. 22, 2006, p. 38). Before then, Brewer did not consider the claim voucher situation to be a potential voting violation.  (Brewer Dep. Sept. 22, 2006, p. 62).  On the day of the election, Brewer was on her way inside the polling place, and Wesley was outside and upon seeing him, she remembered her conversation with Nelson.  (Brewer Dep. Sept. 22, 2006, p. 39).  Brewer asked Wesley, "how do you like living in Chesterton?"  (Wesley Dep. p. 19).  There are differing accounts to how Wesley answered this question.  According to Brewer, Wesley responded that he liked living in Chesterton okay, but only slept there once in a while.  (Brewer Dep. Sept. 22, 2006, p. 57). Wesley's testimony was that he responded by saying, "I don't live in Chesterton.  I live at home with my mother in Porter." (Wesley Dep. p. 19).  Whatever Wesley said, Brewer came away from the conversation thinking that it was strange, so she decided to investigate.  (Brewer Dep. Sept. 22, 2006, pp 37-39, 57).

After Brewer's conversation with Wesley, Brewer went inside the polling place and spoke with Nelson.  (Brewer Dep. Sept. 22, 2006, p. 38).  Brewer asked whether there was a police report

available on the theft of Wesley's car.  (Brewer Dep. Sept. 22, 2006, p. 38).  Nelson told Brewer that there was a report, and that it was at the police station.  (Brewer Dep. Sept. 22, 2006, p. 40).  Brewer walked to the station and got a copy of the report and reviewed it, which included Nicole's statement.  (Brewer Dep. Sept. 22, 2006, pp. 40-41).  Upon reviewing the report, she noticed that Wesley's address was listed as 104 North Jackson Boulevard in Chesterton, Indiana, and that Nicole in her statement provided that 104 North Jackson was her home too.  (Brewer Dep. Sept. 22, 2006, pp. 44, 74-75).

Brewer contacted the two other members of the election board, Messrs. Stankiewicz and Bozik, and told them about the police report and how it brought up a possible problem regarding where Wesley and Nicole Kozuszek were registered to vote.  (Brewer Dep. Sept. 22, 2006, pp. 42, 44).  Brewer asked whether, if there was a residence conflict, they should challenge the Kozuszeks' ballots.  (Brewer Dep. Sept. 22, 2006, pp. 44-45, 48-49).  Her fellow election board members stated that if there was a conflict, a challenge should be issued.  (Brewer Dep. Sept. 22, 2006, pp. 44-45, 48-49).

Brewer contacted election personnel at the Porter County Building and found out that the Kozuszeks were registered to vote in Porter and that their absentee votes were being cast from Porter.  (Brewer Dep. Ap. 22, 2004, pp. 44, 48).  Brewer then went

to the Porter precinct where the Kozuszeks' absentee votes were going to be tallied.  (Brewer Dep. Ap. 22, 2004, p. 48).  Rita Newman was the poll inspector at the Porter precinct.  (Brewer Dep. Sept. 22, 2006, p. 55).  Brewer approached Rita Newman and filled out a challenge form, listing her reasons as being information based on a Chesterton Police Report and a 3-0 vote of the election board.  (Brewer Dep. Sept. 22, 2006, pp. 53-54).  While Brewer issued her challenge around noon or 1 p.m., Newman did not rule on that challenge until the polls had closed.  (Brewer Dep. April 22, 2004, p. 60; Newman Dep., April 13, 2004, p. 38).  It was Newman's sole responsibility as inspector to determine the validity of Brewer's challenge.  (Newman Dep., April 13, 2004, p. 21; Brewer Dep. April 22, 2004, p. 19).  Ultimately, Newman spoiled the Kozuszeks' ballots.  (Newman Dep., April 13, 2004, p. 38).


Plaintiffs' Section 1983 Claim Must Fail Because
There is No Genuine Issue of Material Fact That
Defendants' Conduct Undermined the Organic
Process by Which Candidates were Elected in the
2003 Indiana General Election or that the Election
<u>Process Reached the Point of Patent and Fundamental Unfairness</u>

The Supreme Court has taught that "[u]ndeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).  States, however, have the authority to regulate voter qualifications and election procedures.  *Oregon v. Mitchell,* 400 U.S. 112 (1970),

superseded in respect to minimum age by U.S. Const. amend. XXVI.
Thus, when a plaintiff invokes section 1983 and challenges in
federal court the conduct of a state election, the court is faced
with the difficult task of balancing the protection of the
fundamental right to vote with the avoidance of excessive
entanglement of federal courts in state election matters. *Dieckoff
v. Severson*, 915 F.2d 1145, 1148 (7th Cir. 1990). In this Circuit,
Judge Flaum struck that balance in the widely accepted case of
*Bodine v. Elkhart County Election Bd.*, where he wrote:

> It is not every election irregularity,
> however, which will give rise to a
> constitutional claim and an action under
> section 1983. In what has become a widely
> accepted statement of the standard, Judge Tone
> in *Hennings* held that section 1983 is
> implicated only when there is willful conduct
> which undermines the organic processes by
> which candidates are elected.

788 F.2d 1270, 1271-72 (7th Cir. 1986)(citations omitted).
Judge Flaum equated "undermining the organic process by which
candidates are elected" with the election process reaching the
point of "patent and fundamental unfairness." *Id.(citing Hendon v.
North Carolina State Bd. Of Elections*, 710 F.2d 177, 182 (4th Cir.
1983)). "Infringements of voting rights found to have risen to a
constitutional level include dilution of votes by reason of
malapportioned voting districts or weighted voting systems,
purposeful or systematic discrimination against voters of a certain
class, geographic area, or political affiliation, and election

frauds.  *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975)(citations omitted).

The issue of one's voting rights being infringed upon can raise innumerable potential issues involving both constitutional and statutory concerns.  To stay on task, though, this Court notes that both parties stipulate that the aforementioned law in *Bodine* governs the issues presented in this case.  (Pl. Resp. p. 11-12; Defs' Brief p. 8-9).  In fact, the only issue addressed by the parties is whether Defendants' willful conduct undermined the organic processes by which candidates are elected so as to give rise to a constitutional claim, as examined in *Bodine*.  788 F.2d at 1271-72.  It is each party's burden to make its own legal arguments and, therefore, the Court need only address the legal issues presented by the parties.  See, e.g.*, Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717 (7th Cir. 2004)(noting that the court of appeals has "long refused to consider arguments that were not presented to the district court in response to summary judgment motions); See also *Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir. 1995)(recognizing that courts need not and indeed should not expend limited judicial resources in researching, refining, and otherwise fleshing out arguments that parties themselves do not adequately support); *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995)("[A] litigant who fails to press a point by supporting it by pertinent authority, or by showing why it is

sound despite a lack of supporting authority, forfeits the point."). As no other issues were raised in the parties' briefing, any other possible issues and arguments are deemed waived.

In this case, Plaintiffs have failed to provide any evidence that Defendants engaged in conduct that undermined the organic process by which the candidates were elected in the 2003 Indiana General Election or that the election reached the point of patent and fundamental unfairness. At issue here is the challenge and eventual spoilation of two votes cast in the 2003 Indiana General Election. There is no evidence that any elected position in that election was decided by two or less votes. As such, there can be no real argument that the spoilation of these two votes either undermined the election or caused the election to be unfair. *Bodine*, 788 F.2d 1270, 1271-72. Consequently, Defendants have not established a federal constitutional claim. *Hennings*, 523 F.2d at 864(citing *Hendon*, 710 F.2d at 182).

Not only have Plaintiffs failed to show that the spoilation of their votes had any impact on the election, but they have also failed to show that either Defendant's involvement in the votes' eventual spoilation was driven by an illegal animus. As to Nelson, he simply noticed that Wesley Kozuszek had a different address reported on a election worker claim voucher than reported earlier in a Chesterton Police report, and then reported that discrepancy to Brewer. Tellingly, Plaintiffs do not dispute that the police

-13-

report and claim voucher attribute conflicting addresses for Wesley Kozuszek.  Despite this, Plaintiffs argue that Nelson transmitted this information to Brewer due to some sort of animus Nelson harbored towards Wesley Kozuszek.  However, Plaintiffs have failed to introduce any evidence that could establish that Nelson was motivated to deprive either Plaintiff of their right to vote. Ultimately, not only have Plaintiffs failed to show that Nelson did anything wrong or illegal in reporting the address discrepancy, but they have also failed to show that Nelson's actions were the result of any impermissible motive.   For both of these reasons, Plaintiffs' section 1983 claims against Nelson must fail.

While Brewer had a much larger role in challenging Plaintiffs' votes than did Nelson, there is still no evidence supporting the notion that Brewer acted illegally or that the challenge was driven by any discriminatory animus.  Tellingly, it is undisputed that Brewer only came to learn of the address discrepancy for Wesley Kozuszek after being approached by Nelson at a training session. It is also undisputed that after speaking with Wesley Kozuszek at the polling place on the day of the election, Brewer became suspicious about Kozuszek's true address.  Brewer then went to the Chesterton Police Station to receive and review the police report wherein both Plaintiffs identified their address as being in Chesterton.  After realizing a conflict appeared to be present, Brewer called her fellow election board members for advice, who

-14-

informed her that if a residency issue existed, a challenge should be made to the ballots at issue. After learning that both Plaintiffs were, in fact, slated to vote absentee from Porter, Brewer challenged their votes with Rita Newman, the poll judge. It is further undisputed that Brewer informed Rita Newman that the decision of whether or not to spoil the votes was solely Rita's to make, which was true. (Newman Dep. p. 69). As poll inspector, it was Newman's responsibility alone to determine the validity of Brewer's challenge. Ultimately, Newman spoiled the Kozuszeks' ballots.

Despite the aforementioned undisputed facts, Plaintiffs attempt to show that Brewer intended to spoil their votes unconstitutionally by pointing to various pieces of circumstantial evidence regarding how Brewer informed Rita Newman of the Kozuszeks' residency issue. Specifically, Plaintiffs complain that: (1) Brewer did not inform Rita Newman of all the information regarding Wesley Kozuszek's residency, which included Wesley's statements to Brewer outside the polling place and the fact that the election board claim voucher listed a Porter address for Wesley; (2) Brewer failed to question Wesley Kozuszek about the Chesterton Police Report that listed his address in Chesterton; (3) Brewer wrote "3-0 vote election board" on her challenge when no official election board meeting took place, even though all three members of the election board did agree that if there is a

residency issue regarding a voter, that issue should be challenged with the poll inspector; (4) Brewer had no basis to question Nicole Kozuszek's residency before calling Voter's Registration, where she inquired and learned of Nicole being registered to vote in Porter; (5) Brewer waited to the day of the election to begin the process of investigating Wesley Kozuszek's residency; and (6)  Brewer believed that Plaintiffs resided at home and filed her challenge anyway.

Plaintiffs' method of proof borrows from this Circuit's use of allowing a Plaintiff to prove intentional discrimination under Title VII by constructing a convincing mosaic of circumstantial evidence. (Pls. Response., p. 20)(citing *Rhodes v. Ill. Dept. Of Transp.*, 359 F.3d 498. 504 (7th Cir. 2004)).  Notably, Plaintiffs have failed to cite to any case law, wherein a plaintiff successfully used a mosaic of circumstantial evidence to allow a jury to infer intentional discrimination.  Despite the question of whether the use of such a proof scheme is proper in this context, it is immaterial.  Even when attempting to construct a mosaic of circumstantial evidence, that circumstantial evidence "must point directly to a discriminatory reason for the [] action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).  Here, even taking into account Plaintiffs' complaints regarding Brewer's actions, there is no evidence, whether considered individually or in the aggregate, that points directly to a discriminatory reason

-16-

for Brewer challenging Plaintiffs' votes or that Brewer's challenge was unlawful.  *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005)(noting that a convincing mosaic of circumstantial evidence can be used to infer intentional discrimination, but that circumstantial evidence must point directly to a discriminatory reason for the complained about action).  Obviously, Brewer's method of challenging Plaintiffs' absentee ballots may have been less than perfect.  But, while Brewer's imperfect challenge may make her subject to criticism, it does not, in and of itself, establish that Brewer was attempting to deprive Plaintiffs of their constitutional rights.

Defendants Are Entitled to Qualified Immunity

Nevertheless, even if the spoilation of these two votes in the 2003 Indiana General Election could be fairly said to either undermine the election or cause the election to be unfair and thus sufficient to trigger a section 1983 claim, Plaintiffs claims would still fail based upon Defendants' immunity.  Plaintiffs have only asserted federal claims against Defendants in their individual capacities.  It is undisputed that both Brewer and Nelson were public officials acting within the 2003 Indiana General Election. Qualified immunity protects from liability a public official performing a discretionary function so long as they do not violate "clearly established statutory or constitutional rights of which a

-17-

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Berman v. Young*, 291 F.3d 976, 983 (7th Cir. 2002). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1986).

A 2-part test determines whether government officials such as Brewer and Nelson are entitled to qualified immunity in a civil suit under section 1983. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The threshold inquiry is whether, taken in the light most favorable to Plaintiff, "the facts [] show the [official's] conduct violated a constitutional right." *Id.* at 201 (citing *Siegert v. Gilley*, 500 U.S. 226 (1991)). If the facts reveal no constitutional violation, the inquiry ends and the official will prevail on the merits of the case. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding if there is no constitutional violation, there can be no liability on the part of the individual officer or the government body); *Eversole*, 59 F.3d at 717 ("[t]he first part of this two-part test is a threshold issue that can defeat entirely a claim of qualified immunity. If a plaintiff . . . do[es] not [show] a cognizable violation of constitutional rights, then the plaintiff's claim fails.").

If, on the other hand, the facts amount to a constitutional violation, the Court next examines "whether the right was clearly established." *Saucier*, 533 U.S. at 201. The rationale behind this

is "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation the [official] confronted." *Payne v. Pauley*, 337 F.3d 767, 775-76 (7th Cir. 2003) (citing *Saucier*, 533 U.S. at 202). During this 2-step evaluation process, the Court will bear in mind that the doctrine of qualified immunity leaves "ample room for mistaken judgments" by government officials. *Malley v. Briggs*, 475 U.S. 335, 343 (1986).

"Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." *Mannoia v. Farrow*, 476 F.3d 453 (7th Cir. 2007)(citing *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003)). In their response, Plaintiffs dedicate three sentences in an effort to defeat Defendants' qualified immunity defense. Essentially, Plaintiffs argue only that Defendants are not entitled to qualified immunity because Defendants acted intentionally in order to violate their right to vote. The problem with that argument, aside from its brevity, is that the premise is incorrect; as explained above, the evidence in this case does not support the notion that Defendants acted with the intent to violate Plaintiffs' right to vote or that

-19-

Defendants' actions undermined the election process.  As such, Plaintiffs have failed to show that Plaintiffs deprived them of a constitutional right.

While the right to vote is a clearly established right, *Reynolds*, 377 U.S. at 554, so too is a state's right to regulate voter qualifications.  *Mitchell*, 400 U.S. 112.  Thus, Brewer was allowed to challenge Plaintiffs' votes if she had reason to believe Plaintiffs' did not meet the residency requirements.  See e.g. Justice v. Town of Blackwell, 820 F.2d 238, 241 (7th Cir. 1987)(noting that disallowing a person to vote based upon residency requirements does not conflict with constitutional law).  Based upon the police report detailing the theft of Wesley Kozuszeks' vehicle, Brewer had reason to believe Plaintiffs' did not reside in Porter.  After speaking with two other election officials, Brewer decided to challenge Plaintiffs' votes.  A reasonable election official would likely view Brewer's actions as attempting to follow election law as opposed to attempting to violate Plaintiffs' constitutional rights.  Ultimately, Brewer's conduct was not clearly unlawful and she is therefore entitled to qualified immunity.

State Law Claims

As all of Plaintiffs' federal claims have been dismissed, this Court declines supplemental jurisdiction over Plaintiffs' remaining

state law claims.   Indeed, such a procedure is favored in this Circuit.  *Cady v. South Suburban College*, 152 Fed. Appx. 531, 534 (7th Cir. 2005); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).   Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

MOTIONS TO STRIKE

In Plaintiffs' motion to strike, they argue that the report of Porter County Police Officer Michael Jenkins, referenced in Defendants' memorandum, is inadmissible and should therefore be stricken.

Similarly, in Defendants' motion to strike, Defendants complain that paragraphs 13-17 of J.J. Stankiewicz's affidavit are inadmissible and should be stricken.  In response, Plaintiffs argue that Stankiewicz's opinion in the complained of paragraphs is admissible under Rule 701, as that of a lay witness. Respectfully, this Court disagrees.

However, because the information contained in Officer Jenkins' report and paragraphs 13-17 of Stankiewicz's affidavit are irrelevant to this Court's determination of the legal issues presented, the motions to strike are **DENIED AS MOOT.**

CONCLUSION

For the reasons set forth above, Defendants' Motion for

Summary Judgment (DE# 20) is **GRANTED.**  Plaintiff's Motion to Strike (DE# 26) is **DENIED AS MOOT.**  Defendants' Motion to Strike (DE# 28) is **DENIED AS MOOT.**  Accordingly, Plaintiff's federal claims are dismissed with prejudice and Plaintiff's state law claims are dismissed without prejudice.  The Clerk is **ORDERED** to close this case.


DATED:  August 15, 2007            /s/RUDY LOZANO, Judge
                                   **United States District Court**